Ernest, Appellant, *v.* Elkland Leather Company.

Argued March 17, 1938.

Before KELLER, P. J., CUNNINGHAM, BALD-

RIGE, STADTFELD, PARKER and RHODES, JJ.

*Roger F. Williams,* with him *Chester H. Ashton,* for appellant.

*Charles G. Webb,* with him *G. Mason Owlett,* for appellee.

OPINION BY CUNNINGHAM, J., June 28, 1938:

The claimant in this workmen's compensation case has appealed from the action of the court below in sustaining the exceptions of his employer and its insurance carrier to an award of compensation, made by the referee and affirmed by the board, for the disability incident to an operation for a right inguinal hernia and in entering judgment in their favor.

There is uncontradicted evidence upon the record of the existence of the hernia; that in the opinion of the operating surgeon it was of "present origin"; and that appellant was unable to return to his employment with the defendant company for a period of eleven weeks following the operation. Appellant's claim for compensation was based upon the averment in his claim-petition that the hernia was "caused by lifting and strain" when a bale of leather "bends," which he was loading on a railroad car about 9:30 o'clock in the forenoon of Thurs-

day, October 8, 1931, slipped from the "top tier," fell down and struck him on his right side. In describing the injury he said, "Right at that time the bale struck me I felt a pain in my side," and added that he became "sick [at his] stomach." He also testified he finished loading the car and "started baling shanks," at which work he continued until noon when he went home and did not return on Friday or Saturday.

The controverted question is whether appellant successfully met the burden of rebutting the statutory presumption (created by the hernia amendment [1] of April 13, 1927, P. L. 186, 77 PS §652, further amending Section 306 of our Workmen's Compensation Act of June 2, 1915, P. L. 736) that hernia is a non-compensable "physical weakness or ailment," by introducing "conclusive proof" that "the descent of the hernia immediately followed" the blow from the falling bale of leather, that "there was actual pain in the hernial region," and that these "manifestations" were "communicated to the employer, or a representative of the employer, within forty-eight hours after the occurrence of the accident."

There is no evidence on this record that the descent of the hernia followed shortly after the injury to, or strain of, appellant's side. Nor did appellant himself testify to "pain in the hernial region." All he said was that he "felt a pain in [his] side." The suggestion that

---

[1] "Hernia shall be considered as a physical weakness or ailment, which ordinarily develops gradually and shall not be compensable, unless conclusive proof is offered that the hernia was immediately precipitated by such sudden effort or severe strain that: first, the descent of the hernia immediately followed the cause; second, there was actual pain in the hernial region; third, the above manifestations were of such severity that the same were immediately noticed by the claimant and communicated to the employer, or a representative of the employer, within forty-eight hours after the occurrence of the accident."

the pain was "in the groin" was injected into the testimony by the referee.

Upon the issue of notice, appellant undertook to meet the burden imposed upon him by testifying that not later than 8:30 o'clock on the morning of Saturday, October 10th, (forty-seven hours after the occurrence) a nurse, employed by the leather company to look after injured or ill employees and ascertain the reason for their absence from work, came to his home to inquire why he had not been at work the previous day. His statement of the information he gave the nurse reads: "Q. Did you tell her how you had gotten hurt? A. Told her I strained my side and went to see the doctor. Q. You told her you had a pain in your side—tell her how it happened? A. Told her I was working in a car, and told her I was loading the car." After testifying the nurse "said she would report it to the office," appellant stated he went to the office on Monday morning, October 12th, and was sent to the company's physician who informed him he had a hernia and advised an immediate operation.

Appellant's wife also testified the nurse came to their home on Saturday morning and when asked whether her husband explained to the nurse "what happened to him" her reply was that he told the nurse, in the presence of the witness, that "he slipped and hurt his side."

The testimony of the nurse with relation to what was said during her visit at the home of appellant was in substantial accord with that of appellant and his wife —her version of his statement being that "he said he had a lame side." There is, however, a sharp conflict in the testimony with respect to the date of the visit of the nurse. She testified positively she did not go to the home of appellant until Monday, October 12th, and in support of her statement produced her record made at the time. It is also significant that appellant testified he told the nurse he had gone "to see the doctor." From

his testimony, as a whole, it is clear he did not go to see the doctor until Monday. The referee and board, however, rejected the convincing testimony of the nurse and accepted that of appellant and his wife with respect to the time of the visit of the nurse. As this was within their province under the statute, both courts are bound by their finding that the nurse, as the representative of the employer, was told within forty-eight hours after the accident that appellant had "slipped and hurt his side," or, in his own language, "had strained [his] side," but it by no means follows that these statements were sufficient to meet the requirements of the amendment.

In *Berner v. P. & R. C. & I. Co.*, 100 Pa. Superior Ct. 324, we indicated the essentials of the notice which must be given to the employer, or his representative, within forty-eight hours after the accident upon which the employee relies as having caused the immediate precipitation of the hernia. The "manifestations" described in the amendment are the matters which must be communicated by the employee. These manifestations are, in the language of the amendment: first, the "descent of the hernia immediately following" the accident; and second, "actual pain in the hernial region." Granting that the nurse was the "representative of the employer" in this case and that the communications relied upon in behalf of appellant were made to her within forty-eight hours after the accident, there is not the slightest intimation in any of them that a hernia had resulted from the effort, or strain, incident to the falling of the bale of leather. The extent of the statements to the nurse, as testified to by each witness, was: by appellant, that he had "strained [his] side"; by appellant's wife, that "he slipped and hurt his side"; and by the nurse, that "he said he had a lame side."

Upon its facts, the case now at bar is comparable to that of *Hercheck v. Donahoe's, Inc. et al.*, 119 Pa. Superior Ct. 501, 180 A. 60, and is ruled against appellant

by that case. Paraphrasing the language of this court in the Hercheck case, at page 506, it may be said of the present appeal that even if we accept as verity every statement made by appellant, his wife, or the nurse, he has failed to meet the burden which the legislature has said he must carry in order to obtain compensation for the disability which followed the surgical operation here involved. In each of the cases cited and relied upon by counsel for appellant the character and extent of the "communications" made by the employee differed materially from those shown by this record.

The opinion filed by LEWIS, P. J., of the Fifty-fifth Judicial District, specially presiding, clearly vindicates his conclusion that the compensation authorities erred in the application of the law to the facts, as found by them, and that the exceptions of the employer and its insurance carrier to the award should therefore be sustained. Each of the three assignments of error is based upon the entering of the judgment in favor of the defendants; they are severally overruled.

Judgment affirmed.