## Kingston *v.* Metropolitan Casualty Insurance Company of N. Y., Appellant.

Argued March 7, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frank M. Walsh,* for appellant.

*Geo. W. Ellis,* for appellee.

OPINION BY BALDRIGE, J., April 15, 1935:

In this action of assumpsit to recover under an accident insurance policy for injuries sustained, the plaintiff obtained a verdict in the sum of $1,000. Motions for judgment n. o. v. and a new trial were dismissed, and this appeal followed.

The plaintiff is a farmer in Pike County and keeps a hunters' lodge, known as "The White Oak." On September 17, 1933, upon the solicitation of a representative of the defendant company, the plaintiff made application for, and on the same day received, an insurance policy, which provided for the payment of sick and accident benefits.

Among the questions and answers in the application for insurance appears the following:

"4. What are your occupations? (Name them all) Farmer not working for hire. Classed by the company as? E.

"6. Employer? Self. Your wages or income? $200 per mo.

"7. What is your employer's business? Farm and Boarding House. Business Address? Lord's Valley, Pa.

"14. Have you been disabled by either accident or

illness, or received medical or surgical attention during the last five years? Yes. If so, when, for what and duration? In August 1933 for fracture 2 ribs lasting 2 weeks fully recovered no recurrence.

"15. Do you understand and agree that the right to recovery under any policy which may be issued upon the basis of this application shall be barred in the event that any of the foregoing statements, material either to the acceptance of the risk, or to the hazard assumed by the Company, is false, or in the event that any one of the foregoing statements is false and made with intent to deceive, or that the insurance hereby applied for will not be in force until the delivery of the policy to you while you are in good health and free from all injury and that the Company is not bound by any knowledge of or statements made by or to any agent unless written hereon, and that you will pay annual premium of $61.10 dollars in advance, without notice? Answer Yes."

While the statements in the application are not expressly termed "warranties," we must give them that effect, in view of the insured's agreeing that his right of recovery shall be barred if his statements, material either to the acceptance of the risk, or to the hazard assumed, are false  The plaintiff is, therefore, concluded by his answers as they appear in the application: Skruch v. Metropolitan Life Ins. Co., 284 Pa. 299, 131 A. 186. The importance of ascertaining the correctness of the insured's answers is seen at once.

On September 30, 1933, the plaintiff, while digging potatoes on his farm, tripped on some briars and weeds, fell backwards, and struck his lower spine on a rock, injuring the sacroiliac region of his body.

The defense interposed is that the plaintiff's answers in the written application for insurance were false and material to the risk, as he was not a "farmer not working for hire," but was employed, part of the

time at least, at the rate of 40 cents an hour, on the public highway; that he was not making $200 per month; and further that he was not in sound physical health, as he was receiving compensation for an injury he sustained the early part of August, 1933. This was an affirmative defense, and the burden was on the defendant to properly support its assertions (Kuhns v. N. Y. Life Ins. Co., 297 Pa. 418, 147 A. 76), unless it indisputably appears in the plaintiff's own testimony, as in Koppleman v. Com. Cas. Ins. Co., 302 Pa. 106, 153 A. 121, that the statements in his application, manifestly material to the risk, were absolutely false.

The plaintiff testified that his principal business was farming, but in the winter he had hunters as boarders, and did some guiding. The evidence would fairly support the conclusion that the insured's regular occupation was that of a farmer and a boarding house keeper. His guiding and the eight days he worked on a state road were but incidental to his real occupation. It is not at all uncommon for a farmer to work for a short period on a public road. By so doing he does not change his chief occupation; he continues to be known and described as a farmer, and, in fact, that is what he is, if farming is his principal work and real source of livelihood. It will be noted that the plaintiff's injury, for which he seeks to recover, was not connected with or in any way related to the one he sustained in August; nor is the case complicated by the injury having been received in the course of outside employment. It happened when he was following his ordinary work on the farm. It is true that if it would have been proper to designate the insured as a worker on the road, and if his service was limited to 40 cents an hour, he would have been classified as an "F" risk, and entitled to compensation at $80 per month, instead of an "E" risk, which carries with it compensation of $100 a month. But we

think it can not be said that the insured's designating himself as a farmer not working for hire and as a boarding house keeper was indisputably false and so material to the risk that the court below should have held that the plaintiff was guilty of fraud and had violated the terms of the policy. It is true when the plaintiff was asked about his earning $200 a month, he answered: "I don't know where I would get it out there in the sticks." But he also testified that he earned about $2,000 a year, exclusive of $12 a day he received when he drove his truck.

In our view, this evidence was sufficient for a jury to conclude that plaintiff's total income and wages amounted to the sum he set forth in his application. It follows that his answer to that question was not conclusively incorrect.

Nor do we think that his statement that he was in sound physical health was shown to be irrefutably false. On the 8th day of August, 1933, while working on a state highway, plaintiff was injured and was paid compensation by the State Workmen's Insurance Board, under an agreement, dated August 31, 1933, wherein it was stipulated that compensation would be paid him up to and including September 25th of that year. The defendant offered a receipt, signed by plaintiff, bearing date of September 2, 1933, acknowledging payment of compensation of $83.04, in full for all injuries sustained. It does not necessarily follow that plaintiff was not in sound physical health when the policy was issued on the 17th of September. He frankly stated in his application that he had met with an accident, and correctly gave the result and extent of his injuries. He testified that on the 1st of September, Dr. Voight informed him that he had recovered and was able to resume work. We think this was sufficient evidence to justify the jury in believing that he was in sound physical health when he applied for insurance.

After a careful consideration of all the evidence, we are of the opinion that it could not. be held that plaintiff's statements were so absolutely and manifestly false that no doubtful issues of fact were raised for the jury's consideration.

The appellant asserts further that the verdict was excessive and against the weight of the evidence. Under the terms of the policy, if the insured sustained bodily injuries resulting in disability, solely through violent and accidental means, he was entitled to the monthly accident indemnity of $100 per month. The evidence shows that after the injury he immediately consulted Dr. Mackey, who found him suffering from a sacroiliac strain due to a direct trauma. This physician treated the insured eight or nine times in his office "before February or March," but owing to the doctor's absence from his office for a couple of months, he did not see this patient again until his return in "April or May," when he pronounced that the insured, who was known to him formerly as a tremendously strong and powerful man, was suffering from a chronic sacroiliac strain, which, in his judgment, was incurable. The plaintiff testified that he was unable to work and at the time of the trial he was under the care of Dr. Van Dyke and Dr. Voight. Practically none of the facts testified to on the part of the plaintiff as to his physical condition or the other salient features of his case were contradicted by defendant.

In view of the serious character and extent of the insured's injury, and the proof of his incapacity to work, we can not say that the verdict was so excessive as to justify this court's interference.

Judgment of the lower court is affirmed.