## Levitin v. Belmar Moving & Storage Co.

148

*Nathan Holstein*, for claimant.
*C. W. Snyder* and *E. R. White*, for defendant.

ELLENBOGEN, J., March 24, 1941.—Jacob Levitin, claimant, was awarded compensation by the workmen's compensation referee for an industrial accident resulting in an inguinal hernia. On an appeal to the Workmen's Compensation Board this award was reversed and compensation refused. The case is now before us on appeal to this court.

Claimant was employed by defendant as a warehouseman. On August 1, 1939, he went out with a moving van. After practically all of the furniture had been taken into the van, the men started to take out the piano, weighing close to 900 pounds. In doing so, a helper lifted his corner in such a way as to throw the weight of the piano toward claimant. As claimant strained to get his corner up, he felt something tear and drop in his groin. A fellow-workman had to change his grip and assist him. As the claimant straightened up, he felt nauseated and felt a pain in his stomach and side. Claimant kept his grip on the piano and it was put on a stool. Then claimant helped to push it over the window sill.

Claimant told the foreman that he had hurt himself and he was rubbing his right groin with his hand as he did so. He found a swelling there. He did no more

heavy work but returned to the warehouse where he did his regular light work of checking in furniture.

When he found that rubbing the lump with liniment did not help, claimant, on August 5, 1939, reported the whole occurrence to the secretary of defendant company. He was advised to see a physician, which he did, who diagnosed the case as being a hernia. On August 8, 1939, he was operated on for a hernia and returned to work on October 30, 1939.

The board did not differ in any of its findings with the referee. It found that claimant sustained an inguinal hernia on August 1, 1939, but it refused compensation because it disagreed with the referee about the interpretation of section 306 ($h$) of the Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520. The board was of the opinion that, under that section, compensation could not be allowed, unless the manifestations of the hernia were so severe that claimant immediately ceased working. This section reads as follows:

"Hernia shall be considered as a physical weakness or ailment, which ordinarily develops gradually, and shall not be compensable, unless incontrovertible proof is offered that the hernia was at once precipitated by sudden effort or severe strain and that: first, the descent of the hernia followed the cause without intervening time; second, there was actual pain in the hernial region at the time of descent; third, the above manifestations were of such severity that the same were noticed at once by the claimant, necessitating immediate cessation of work, and communicated to the employer or a representative of the employer within forty-eight hours after the occurrence of the accident."

The award of compensation depends on the interpretation of the third requirement that "the above manifestations were of such severity that the same were noticed at once by the claimant, necessitating immediate cessation of work." In interpreting this clause

we must remember that the Workmen's Compensation Act must be liberally construed in order to achieve its benevolent and humanitarian purposes: Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173; Petrovan v. Rockhill Coal & Iron Co., 130 Pa. Superior Ct. 58; Uditsky v. Krakovitz, 133 Pa. Superior Ct. 186.

Section 306(h) of the Pennsylvania Workmen's Compensation Act of 1939 is a restatement of section 306(g) of the Act of April 13, 1927, P. L. 186, with a few changes. One of the changes concerns the clause that we are now considering.

In the Act of 1927, supra, this clause reads as follows:

". . . third, the above manifestations were of such severity that the same were immediately noticed by the claimant. . . ."

This was changed by section 306(h) of the Act of June 21, 1939, P. L. 520, to read as follows:

". . . third, the above manifestations were of such severity that the same were noticed at once by the claimant, necessitating immediate cessation of work . . . ."

We note that the words "noticed at once" are substituted for the words "immediately noticed" and that there is added the clause "necessitating immediate cessation of work."

This indicates the intent of the legislature to make recovery in hernia cases more difficult and to confine it to cases where the manifestations were of such severity that they were noticed at once. "At once" is a stronger term than the word "immediately", used in the Act of 1927. It means instantly. Further, the severity of the manifestations must be such that they may be said to "necessitate" immediate cessation of work. In this connection, the milder expression "immediate" is used as against the stronger expression "at once", used in the preceding clause of the same section.

The clause which we must interpret reads "manifestations . . . of such severity . . . necessitating immediate cessation of work." This clause does not state that claimant must immediately cease working. It does not describe what claimant must do. It is merely descriptive of the severity of the manifestations required. The act of assembly does not state that the manifestations must be so severe as to compel absolutely the immediate cessation of work. It states only that they must be such as to "necessitate" immediate cessation of work. That is an important distinction.

The term "immediate" used in this connection does not mean instantly. It does not mean that claimant must necessarily cease working the very moment that he feels the descent of the hernia: Sussick v. Glen Alden Coal Co., 108 Pa. Superior Ct. 593. Such a requirement would be unreasonable and indeed dangerous in many cases. Often the employe cannot cease work at the very moment when the strain of his work causes a descent of the hernia, because to do so might seriously endanger himself or his fellow-employes. The case before us is a good example. If claimant would have dropped the piano immediately when he felt the descent of the hernia, the piano would have been thrown entirely on him and he would have been seriously injured.

This indicates that the word "immediately" is not to be taken in a literal, strict sense, but must be interpreted liberally. The instinct of self-preservation would prevent a workingman from dropping his work at a stage where such action would injure him, and most workingmen would be unwilling to do so if that would endanger their fellow-employes. Men who do heavy physical work take pride in their strength and prowess. They would not yield easily in the presence of their fellow-workingmen until they have completed the task before them.

Interpreted in a reasonable way, the clause in question means that the manifestations of the hernia must

be of such severity that they would necessitate cessation of work as soon as reasonably feasible. Moreover, cessation of work does not necessarily mean cessation of all work. It means cessation of the work which caused the hernia and which claimant was doing at the time. We all know that a hernia does not prevent the doing of certain types of light work. It is unreasonable to believe that the legislature intended to bar an honest workingman from recovering compensation who, when hurt, ceased the heavy work which he was doing but attempted to aid his employer by continuing to do some form of light work.

In the case at bar, the hernia occurred as claimant was assisting in putting the piano on a stool. He could not drop the piano until that was done. He was needed to complete the task and so joined in lifting the piano another few inches up onto the window sill and pushing it out of the window so that it could be lowered to the street. Had he refused to do so, the piano would have had to remain sitting on the window sill while his foreman sent for a substitute helper. Most men would have acted in a similar manner.

Thereafter, claimant did not do any heavy work. He returned to the warehouse and did only his regular light, clerical work which consisted of checking in the furniture which arrived at the warehouse.

Five weeks before his injury, claimant was examined by Dr. Boharas, who testified that he had no hernia at that time. Both the referee and the board found that the strain of moving the piano caused the hernia on August 1, 1939, and that claimant gave timely notice to his foreman. The board, however, believed that the clause in question prevented a recovery, because claimant had aided in completing the task of hoisting the piano through the window and because he continued to do light clerical work on that day and for a few days thereafter. In that the board misinterpreted the law.

We are obliged to reverse the conclusion of the board that the statute prevents a recovery in this case. Ordi-

narily we would send the case back to the board for further hearing and determination of the case consistent with this opinion, but it seems useless to do so in this case, because the board affirmed the essential questions of fact, found by the referee, and disagreed only as to the interpretation of the statute in question. Under these circumstances, since there is no dispute about the facts and about the amount of compensation involved, we will reinstate the award entered by the referee.

## Order

And now, to wit, March 24, 1941, the first exception of claimant to the decision of the Workmen's Compensation Board is sustained, the fourth finding of fact of the board is set aside, and the fourth finding of fact of the referee is reinstated and substituted therefor; the second exception of claimant is sustained, the sixth finding of fact of the Workmen's Compensation Board is set aside, and the sixth finding of fact of the referee is reinstated and substituted therefor; the third exception of claimant is sustained, the seventh finding of fact of the Workmen's Compensation Board is set aside, and the seventh finding of fact of the referee is reinstated and substituted therefor; the fourth exception of claimant to the decision of the Workmen's Compensation Board is sustained, the second conclusion of law of the Workmen's Compensation Board is set aside, and the second conclusion of law of the referee is reinstated and substituted therefor. The fifth exception of claimant is also sustained. The action of the Workmen's Compensation Board in setting aside the award of the referee is reversed, the appeal from such action is sustained, and the award of the referee is reinstated; judgment is hereby entered in favor of Jacob Levitin and against Belmar Moving & Storage Company, a corporation, defendant, and Pennsylvania Manufacturers' Association Casualty Insurance Company, the insurance carrier, for the sum of $257, being compensation at the

rate of $18 per week beginning August 13, 1939, and continuing to October 30, 1939, a period of 11 1/7 weeks, together with interest thereon from August 13, 1939, on deferred payments, at the rate of six percent per annum, as provided in section 410 of the Workmen's Compensation Act, together with hospital and medical expenses, incurred during the first two months of disability, and costs, as follows:

> To Dr. S. Thomas Schubb...........$75.00
> To Dr. S. Boharas................. 50.00
> To Montefiore Hospital............. 79.55
> For medical expenses.............. 3.50
> For witness bill................... 5.00